IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS CENTRAL BUSINESS LINES CORP., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:07-CV-1351-N |
| CITY OF MIDLOTHIAN, | § § § | |
| Defendant. | § | |

**PRELIMINARY INJUNCTION**

Before the Court is Plaintiff Texas Central Business Lines Corp.'s ("TCB") Motion for Preliminary Injunction [16] filed on August 13, 2007, requesting that the Court restrain Defendant City of Midlothian's (the "City") enforcement of Ordinance 2004-1 (the "Railroad Ordinance"). Because the Court concludes that the Railroad Ordinance is likely preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101-10502, that Plaintiff faces irreparable harm without preliminary injunctive relief, and that public policy as expressed through the ICCTA favors such relief, the Court grants TCB's Motion.

**I. B**ACKGROUND

TCB is a private railroad corporation that operates over trackage located north of State Highway 287 and east of U.S. Highway 67 in Midlothian, Texas (the "Inland Port Trackage"). There, TCB receives, delivers, transfers in transit, stores, and handles commodities – including petroleum fuel – that are transported by rail and transloaded from

rail cars to trucks for transportation to the ultimate destination. TCB does not physically undertake petroleum transloading operations itself. Instead, TCB's fuel transloading operations are carried out by two other companies – Savage Industries, Inc. ("Savage") and Musket Corp. ("Musket") – both of which act as contractors under TCB's control. On January 6, 2004, the City amended its zoning ordinance by passing the Railroad Ordinance. By its terms, the Railroad Ordinance regulates railroad uses and, specifically, prohibits the operation of a petroleum storage or transfer station in a Light Industrial zoning district without a Special Use Permit.[1] In a letter dated August 3, 2007, the City advised TCB that it considered TCB's railroad activities to violate the Railroad Ordinance and demanded that TCB "cease **immediately**." Pl.'s App. Ex. A3 (emphasis in original). The City also warned that "violations of the Zoning Ordnance are subject to a fine of up to Two Thousand dollars ($2,000.00) per day for each offense." *Id.*

TCB contends that the Railroad Ordinance is preempted by federal law and that compliance with the Railroad Ordinance will completely interfere with and disrupt the common carrier rail operations of TCB in its performance of transloading services, in that it will completely prevent the rail transportation of commodities to the TCB Transload Center. TCB moved for a temporary restraining order ("TRO") on August 6, 2007, and on

---

[1] TCB leases and operates a facility of approximately 20 acres owned by MidTexas International Center, Inc. ("MidTexas") that is currently zoned Light Industrial.

August 9, 2007 the Court granted TCB's request by issuing a TRO prohibiting the City from enforcing the Railroad Ordinance against TCB's transloading operations.[2]

In addition to threatened enforcement of the Railroad Ordinance, the City has halted TCB's attempts to acquire electrical service for its 20 acre site.  To continue operating effectively, TCB's transloading operations require electrical service.  As a common carrier TCB may be called upon to transload many commodities, some of which must be weighed on electronic scales once loaded from rail cars onto trucks. Further, some of TCB's transloading customers have requested that their transloading operations be conducted at night, which will require the installation of lighting to illuminate its Transload Center. Before TCB can obtain electrical service, the City must first inspect TCB's site and issue a Certificate of Occupancy ("CO").  TCB submitted a CO application on August 2, 2007.  On August 10, after the Court issued the TRO, Don Hastings, the City's City Manager informed TCB that the City would not issue *any* permits to TCB during the pendency of this lawsuit. During an August 13 phone conversation, Mr. Hastings reiterated that the City would not act on TCB's CO application and would not conduct the required inspection.

TCB requests that the Court enjoin the City from enforcing the Railroad Ordinance and also from taking any other action that interferes with TCB's transloading operations, including refusing to issue a CO for TCB's site.

---

[2]The Court subsequently issued an Order Extending Temporary Restraining Order on August 17, 2007, extending the TRO through August 29, 2007 at 5:00 p.m.

## II. TCB IS ENTITLED TO AN INJUNCTION PROHIBITING ENFORCEMENT OF THE RAILROAD ORDINANCE

TCB has satisfied each of the essential elements for preliminary injunctive relief. The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A preliminary injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion. *Harris County v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999). To obtain a preliminary injunction, the movant must establish the following: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable harm if the preliminary injunction is denied; (3) that the potential injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the preliminary injunction will not disserve the public interest. *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).

### *A. The Railroad Ordinance Is Preempted*

TCB has demonstrated a substantial likelihood that it will succeed on the merits of its claim that the Railroad Ordinance is preempted by the ICCTA. Through the ICCTA, 49 U.S.C. §§ 10101-10502, Congress entrusted the Surface Transportation Board ("STB") with exclusive jurisdiction over "transportation by rail carriers," 49 U.S.C. § 10501(b)(1), and expressed clear intent that the remedies provided by the ICCTA "with respect to rail transportation are exclusive and preempt the remedies provided by Federal or State law."

49 U.S.C. § 10501(b); *see also PCI Trans., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) ("In light of the plain language of the statute and its legislative history, . . . we hold that the complete preemption doctrine applies."); *City of Auburn v. United States*, 154 F.3d 1025, 1030 (9th Cir. 1998) ("It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations."). Accordingly, if railroad-related activities fall within the ICCTA's definition of "transportation by rail carrier," the STB has exclusive jurisdiction and any state or local laws or regulation that impinge upon that jurisdiction are preempted. *See, e.g.*, *Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197 (5th Cir. 2002) ("Federal law will override state law under the Supremacy Clause when . . . Congress expressly preempts state law . . . .").

      The Railroad Ordinance is preempted by the ICCTA because on its face the Railroad Ordinance purports to regulate the use of railroads. The Railroad Ordinance is not a law of general applicability that happens to apply to railroad activities, but rather is expressly aimed at "the regulation of railroad uses" and directly regulates where a rail carrier may operate an "Industrial Rail Storage Yard" or an "Auxiliary Rail Line or Right-of-Way." Pl.'s App. Ex. A2 (City of Midlothian Ordinance 2004-1). Accordingly, because the Railroad Ordinance by its own terms attempts to invade the exclusive jurisdiction of the STB, the Court finds that it is facially preempted and thus unenforceable. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 911 F.2d 993, 998 (5th Cir. 1990) ("'Facially' preempted state laws . . . are those which the court can tell are preempted . . . simply by looking at the federal law, the challenged state law, and the cases applying them."); *see also Morales v. Trans*

*World Airlines, Inc.*, 504 U.S. 374, 386 (1992) (explaining that a state law may be preempted whether it is "specifically addressed to the" subject matter of federal legislation or an unlawful "particularized application of a general statute").

Even if the Railroad Ordinance were not a facial intrusion upon the jurisdiction of the STB, it would still be preempted as applied to TCB because TCB's transloading activities meet the ICCTA's definition of "transportation by rail carrier." To fall within the regulatory jurisdiction of the STB, TCB's activities "must be both: (1) transportation; and (2) performed by, or under the auspices of, a rail carrier." *High Tech Trans, LLC Petition for Declaratory Order*, STB Finance Docket No. 34192, 2003 WL 21952136, at *3 (STB Aug. 14, 2003). The ICCTA defines "transportation" to include a "locomotive, . . . vehicle, . . . warehouse, . . . property, facility, instrumentality, or equipment of any kind related to the movement of . . . property" as well as "services related to that movement, including receipt, delivery, . . . transfer in transit, . . . storage, handling, and interchange of . . . property." 49 U.S.C. § 10102(9). In accordance with the decision of many other courts and the STB itself, the Court finds that TCB's transloading activities fall within this broad definition. *See High Tech Trans, LLC Petition for Declaratory Order*, 2003 WL 21952136, at *4 ("There is no dispute that [Plaintiff rail carrier's] transloading activities are within the broad definition of transportation. The Board has consistently found such activities to be transportation under 49 U.S.C. 10102(9)."); *Green Mt. R.R. Corp. v. Vermont*, 404 F.3d 638, 644 (2d Cir. 2005) ("[Plaintiff Railroad] serves industries that rely on trucks to transport goods from the rail site for processing; so the proposed transloading and storage facilities are integral to the

railroad's operation and are easily encompassed within the Transportation Board's exclusive jurisdiction over 'rail transporation.'"); *Canadian Nat. Ry. Co. v. City of Rockford*, No. COV/04-40323, 2005 WL 1349077, at *4 (E.D. Mich. June 1, 2005) ("This Court, though, agrees with the decision of other courts and of the STB, which have held that the activities which take place at such transload facilities are considered 'transporation' by the ICCTA."). Indeed, the STB itself previously ruled that the rail lines at issue in this case – the Inland Port Trackage – falls within the STB's exclusive jurisdiction. *See Texas Central Business Lines Corporation Operation Exemption*, STB Finance Docket No. 33997, 2002 WL 31097635, at *2 (STB Sept. 20, 2002).

Further, the transloading operations that the City seeks to prohibit are carried out "by rail carrier." The ICCTA defines "rail carrier" as "a person providing common carrier railroad transportation for compensation." 49 U.S.C. § 10102(5). The City argues that the activities at issue are not "transportation by rail carrier" because the physical act of transloading at issue in this case is undertaken by Savage or Musket, not by rail carrier TCB. The City relies on precedent holding that bulk distribution centers operated by third-parties on land leased from a rail carrier do not fall within the STB's jurisdiction and thus may be regulated by local authorities. *See* Def.'s Resp. Br. at 13-16 (citing *Florida E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324 (11th Cir. 2001) and *CFNR Operating Co. v. City of American Canyon*, 282 F. Supp. 2d 1114 (N.D. Cal. 2003)). However, the activities of third-party non-rail carriers fall within the preemptive scope of STB jurisdiction provided

that those activities are executed "under the auspices of a rail carrier." *High Tech Trans, LLC Petition for Declaratory Order*, 2003 WL 21952136, at *3.

The cases cited by the City are distinguishable from the facts at issue in this case because, here, the relationship between TCB and its contractors, Musket and Savage, "is not one of shipper to carrier, but one of contractor working under the auspices of a rail carrier." *Canadian Nat. Ry. Co.*, 2005 WL 1349077, at *6 (distinguishing *CFNR Operating Co.* and *Florida E. Coast Ry.*). While no court has precisely delineated the boundary of the STB's jurisdiction over third-party transloaders, those that have examined the issue have focued on the level of control exercised by the rail carrier, looking to many factors including whether the third-party or the rail carrier owns or leases the transload facility, *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, No. 05-4010, 2007 WL 576431, at *21 (D.N.J. Feb. 21, 2007) ("Where a 'rail carrier builds and owns a truck-to-rail transloading facility, and holds it out to the public as its own facility, but chooses to have it run by a contract operator, the STB would find preemption . . . .'" (quoting *High Tech Trans, LLC Petition for Declaratory Order*, 2003 WL 21952136, at *5)), whether the rail carrier holds itself out as providing the transloading service, *Canadian Nat. Ry. Co.*, 2005 WL 1349077, at *6 (finding STB jurisdiction where rail carrier "hold[s] itself out as providing . . . transloading services" and "interacts with the shippers" even though a third-party transloader operates the facility), and whether the rail carrier has the right to inspect the transloading operations and facility, *Coastal Dist., LLC v. Town of Babylon*, 216 Fed. Appx. 97, 101 (2d Cir. 2007) (finding STB

jurisdiction even though a non-rail carrier conducts the day-to-day operations of the transloading facility because rail carrier has a "right to inspect or audit them").

Unlike the rail carriers in the cases cited by Defendant, which exercised virtually no control over their transloading operations and facilities, TCB exercises a great deal of control over Musket and Savage. TCB leases the Transload Center from MidTexas, Pl.'s App. Ex. E (Lorman Decl. ¶ 10), and both Savage and Musket act solely as contractors under the control of TCB, Pl.'s App. Ex. E (Lorman Decl. ¶ 8), E3. Under TCB's Transload Contractor Services Agreement, Pl.'s App. Ex. E3, TCB has the right "to review [the contractor's] performances . . . to meet TCB's quality and commercial requirements," ¶ 3.13, and TCB retains "the sole right and obligation to invoice Customers," ¶ 4.5. Accordingly, the Court finds that TCB's transloading operations are likely carried out "by rail carrier" as defined in the ICCTA.

Finally, the City contends that enforcement of its Fire Code brings it within a safety exception to ICCTA's complete preemption. However, the specific Fire Code provision has not been placed before the Court and therefore is not affected by this Order. Accordingly, TCB has shown that there is a substantial likelihood that it will succeed on the merits because the Railroad Ordinance is preempted by the ICCTA.

### B. Because the Railroad Ordinance Is Preempted, The Remaining Preliminary Injunction Factors Are Resolved in TCB's Favor

TCB has further established that it satisfies the remaining three requirements for a preliminary injunction. Indeed, when a case involves preemption, a finding of likely success on the merits typically carries with it an implicit determination that the other three elements

have been satisfied. *See Greyhound Lines, Inc. v. City of New Orleans*, 29 F. Supp. 2d 399, 343 (E.D. La. 1998) (citing *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 783 (5th Cir. 1990)).

*1. Irreparable Harm.* – The Court finds that TCB has demonstrated that absent preliminary relief it will face irreparable injury. "A party may be irreparably injured in the face of threatened enforcement of a preempted law." *Villas at Parkside Parts. v. City of Farmers Branch*, ___ F. Supp. 2d ___, No. 3:06-CV-2371-L, 2007 WL 1774660, at *17 (N.D. Tex. June 19, 2007); *see also The New Orleans Towing Ass'n v. City of New Orleans*, No. Civ.A. 99-3131, 2000 WL 193071, at *2 (E.D. La. Feb., 15 2000) ("If the local ordinance is preempted by federal law, failure to grant the injunction would result in irreparable injury to plaintiffs who would be deprived of a 'federally created right . . . .' " (citing *Mattox*, 897 F.2d at 784)) (abrogated on other grounds). Accordingly, the fact that City is likely to enforce the Railroad Ordinance against TCB absent injunctive relief is sufficient to establish irreparable harm.

TCB has also shown a threat of irreparable harm because absent injunctive relief it faces unquantifiable economic losses. "[W]hen economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991); *see also Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. 1981) ("A substantial loss of business may amount to irreparable injury if the amount of lost profits is difficult or impossible to calculate . . . ."). Without the ability to transload petroleum products, TCB would lose future contracts,

customer relationships, and other inherently indeterminable business-related losses, making damages virtually incalculable, and thus irreparable.

*2. Balance of Hardships.* – The Court further finds that TCB has established that the balance of hardships tips in its favor because "enjoining a preempted ordinance would not subject the City to any undue hardship or penalty because the [preliminary] injunction would require only the City's compliance with federal law under the Supremacy Clause." *Greyhound Lines, Inc.*, 29 F. Supp. 2d at 343 (citing *Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir. 1962)).

*3. Public Interest.* – Finally, the Court finds that public policy as established by Congress through the ICCTA resolves the last factor in TCB's favor. In enacting the ICCTA, Congress expressed its belief that public policy favors concentrated regulation of the nation's railroad facilities. *See* 49 U.S.C. § 10101; *Canadian Nat. Ry. Co.*, 2005 WL 1349077, at *3 ("Congress enacted the ICCTA as a means of reducing the regulation of the railroad industry . . . . to foster railroad transportation as a safe, effective, competitive, and reasonable mode of transportation.").

## IV. CONCLUSION

TCB has demonstrated that the Railroad Ordinance is likely preempted by the ICCTA, that without preliminary relief it faces unquantifiable and irreparable damages, and that public policy favors centralized regulation of the nation's railroad facilities. The Court therefore grants TCB's request for a preliminary injunction.

It is ordered, therefore, that Defendant City of Midlothian, together with its officers, agents, servants, employees, and attorneys, and any persons in active concert or participation with them who receive actual notice of this Order, are enjoined and restrained from enforcing the Railroad Ordinance against TCB in any manner, including but not limited to withholding a Certificate of Occupancy based in any way on the Railroad Ordinance, provided that Plaintiff, or Plaintiff's agent, first file with the Court an undertaking with surety, or cash in lieu of a bond, in the sum of $1,000.00 for payment of such costs and damages as may be incurred or suffered by any party who may be found to be wrongfully restrained or enjoined, such security to be approved by the Clerk of the Court.

Signed August 24, 2007.

_____
David C. Godbey
United States District Judge